IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| TRACY TODD PRESSON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:19-cv-03192-RK |
| | ) | |
| DARRIN REED; AND JEFF LANE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' second motion for summary judgment. (Doc. 102.) The motion is fully briefed. (Docs. 103, 111, 118.) Because the Court finds triable issues of fact remain and Defendants are not entitled to qualified immunity on this summary judgment record, Defendants' motion for summary judgment (Doc. 102) is **DENIED**.

### I. Background

The following are the undisputed facts in this case.[1] Plaintiff was arrested on October 2, 2018, by the Ozark County Sheriff's Department and, as a result, was held in the Ozark County

---

[1] The Court begins by observing the undisputed facts include, in part, those facts asserted in "Plaintiff's Statement of Material Facts," included in Plaintiff's opposition to Defendants' motion for summary judgment (*see* Doc. 111 at 16-23), that are not properly controverted. *See, e.g.*, *Farber v. Am. Family Mut. Ins. Co.*, 46 F. Supp. 3d 903, 905 n.2 (E.D. Mo. 2014) (considering the undisputed facts collectively from defendant's statement of uncontroverted material facts and plaintiff's additional statement of uncontroverted material facts). Specifically, the Court notes for numerous asserted facts Defendants' response challenges only the record citation on which Plaintiff relies to support a particular asserted fact – Plaintiff's verified complaint. The Court agrees with Defendants that generally, a party cannot support an assertion of fact in summary judgment pleadings by referring only to the complaint or initial pleading. *See, e.g.*, *Beshears v. Wood*, No. 3:17-05048-CV-RK, 2019 WL 1049390, at *4 (W.D. Mo. Mar. 5, 2019) (observing a plaintiff "cannot rely on allegations in the Complaint in opposing summary judgment) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this case, however, Plaintiff (initially proceeding pro se) filed a verified complaint followed by a verified amended complaint. (Docs. 1, 13.) In the Eighth Circuit, a "verified complaint is the equivalent of an affidavit for purposes of summary judgment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (2001) (citation omitted); *see Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006). Thus, Plaintiff may properly submit as an undisputed fact one that is supported by his verified complaint. Despite defense counsel's assertion to the contrary at oral argument that Plaintiff's verified complaint cannot be relied on as a matter of law in the context of this summary judgment motion because Plaintiff is a convicted felon and is wholly uncredible, credibility determinations play no role and are wholly within the purview of a fact-finder. Summary judgment must rely on the undisputed facts and the law, not credibility determinations. *See Kenney v. Swift Transp., Inc.*, 347 F.3d

Jail for approximately six weeks until November 19, 2018. Defendants are (1) Darrin Reed, Sheriff of Ozark County prior to and during Plaintiff's detention; and (2) Deputy Jeff Lane, who worked at the jail.

At the time of his arrest, Plaintiff was prescribed several medications to treat various diagnosed conditions: Cyclobenzaprine – for a back injury; Adderall – for attention deficit disorder; Omeprazole – for gastroesophageal reflux disease; and Ambien – for insomnia. Plaintiff's brother delivered each prescription to the jail. Plaintiff told Deputy Darrin Reed he needed his long-term prescription medications including Adderall, Omeprazole, Ambien, and "muscle relaxers for a back injury."

While at the jail, Defendants did not give Plaintiff his Cyclobenzaprine prescription medication[2] or his Adderall prescription; the latter, they contend, "because [Adderall] is a controlled substance, it is not administered to any detainee at the jail pursuant to policy."[3] Defendants do not dispute that Plaintiff was not given these prescriptions. Plaintiff states in his verified complaint that he "repeatedly" told Defendants his Ambien prescription was for one tablet per day at bedtime, as needed, and not for more than 7-10 days at a time. Plaintiff alleges Defendants gave him Ambien "multiple times a day" including at times other than bedtime, and for more than 7-10 days. Plaintiff also alleges in his verified complaint that as a result of not receiving his prescription medications as prescribed for several weeks, he suffered "severe pain, depression, and throwing up bile," and ultimately attempted suicide.

On October 17, 2018, Plaintiff told Deputy Lane he was experiencing chest pain. Plaintiff alleges his pain and vomiting had become so severe over time that he thought he was having a heart attack. Deputy Lane moved Plaintiff to a holding cell, after which Plaintiff was later taken to a local medical clinic for medical treatment. Medical records from the clinic show Plaintiff complained of "shortness of breath," "chest pain," "throwing up acid," and that his "right lung

---

1041, 1044 (8th Cir. 2003) ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations.") (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

[2] As in the parties' initial summary judgment submissions, it is not clear on the summary judgment record why Defendants did not administer Plaintiff's Cyclobenzaprine prescription medication.

[3] As the Court noted in its first summary judgment order, the jail manual, a portion of which was again set forth in the summary judgment record, does not appear to include this "controlled substance policy" to which Defendants refer. Defendants do not attempt, in this second motion for summary judgment, to clarify this record or the material existence (if any) of this policy.

feels on fire." Plaintiff told doctors he had not had his Omeprazole medication for seventeen days. The doctor recommended Plaintiff "[r]estart[] Omeprazole."

Then, beginning on November 8, 2018, journal entries (attached to Defendant's suggestions in support of summary judgment, *see* Doc. 103-12) reflect Plaintiff contemplating suicide by taking "30 sleeping pills" he had. On November 15, 2018, Plaintiff ingested 20-30 prescription Ambien pills he had collected and was taken to the Ozark Medical Center Emergency Room. While in the ER, Plaintiff tried to hurt himself again by throwing himself from the bed.

In their motion for summary judgment, Defendants primarily rely on the jail's medical administration records. These records, set forth in the summary judgment record, reflect that "meds" were administered to Plaintiff sometimes once, twice, or three times a day at varying times, except for November 8, 2018, when no medication is recorded as having been administered.[4] The record also reflects various jail personnel, including Deputy Lane, administered medication to Plaintiff. Sheriff Reed did not administer any medications to Plaintiff, although Deputy Lane told Plaintiff that Sheriff Reed's approval was required to give Plaintiff his prescription medications. Finally, Defendants do not dispute the jail's manual includes the following policy regarding administration of detainees' prescription medications: "Medications: Jail staff will administer legally prescribed medications according to the prescribing physicians. Jail staff will not deviate from the physician's instructions."

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." *Van Wyhe v. Reisch*, 581 F.3d 639, 648 (8th Cir. 2009); *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 884-85 (8th Cir. 2009). In applying this standard, the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008). The inquiry is whether "there are any genuine factual issues that

---

[4] While there is no record of medications administered on November 15, 2018, and November 16, 2018, the medical records show Plaintiff was receiving medical treatment at the Ozark Medical Center after attempting suicide on those days.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Generally, in resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment); note 1. In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

### III. Discussion

Plaintiff alleges Sheriff Reed and Deputy Lane violated his Eighth Amendment rights and were deliberately indifferent to his serious medical needs by withholding and misadministering his various prescription medications. Defendants argue they are entitled to summary judgment on this record because the undisputed facts show (1) Plaintiff cannot establish a constitutional violation, and (2) they are entitled to qualified immunity.

#### A. Section 1983 and Qualified Immunity

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

This statute was designed to provide "a broad remedy for violations of federally protected civil rights." *Monell*, 436 U.S. 658, 685 (1978). However, § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything." *Id.* Rather, § 1983 provides a remedy for violations of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." § 1983; *see also Albright*, 510 U.S. at 271 (stating that § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (noting

4

that the phrase "Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statutes, as well as those created by the Constitution). Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution [or] laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Van Zee v. Hanson,* 630 F.3d 1126, 1128 (8th Cir. 2011) ("To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right").

In response to a § 1983 claim, a defendant may assert the defense of qualified immunity. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citations omitted). "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects government officials from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotation omitted). Put another way, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotations omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted).

The Court uses a two-part test to determine whether a government official is entitled to qualified immunity. *See Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014). The Court must decide (1) whether the facts when viewed in a light most favorable to the plaintiff demonstrate the defendant deprived plaintiff of a constitutional or statutory right, and (2) whether the right was clearly established at the time of the deprivation. *Id.* "A public official is entitled to qualified

5

immunity unless: (1) their conduct violated a constitutional right, *and* (2) that right was clearly established." *Davis v. Buchanan Cty., Mo.*, 11 F.4th 604, 623 (8th Cir. 2021). "Qualified immunity is appropriate when no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the [officials]' conduct violated a clearly established constitutional right." *Id.* (citation and quotation marks omitted). In other words, "[i]f the answer to either question is no, then [a defendant] is entitled to qualified immunity." *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010).

      **B.**    **Whether Defendants are entitled to summary judgment because Plaintiff cannot establish a constitutional violation**

First, Defendants argue they are entitled to judgment as a matter of law because they did not violate Plaintiff's constitutional rights and were not deliberately indifferent to any serious medical need.

As a pre-trial detainee at the time of the alleged constitutional violation, Plaintiff is protected under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Bordock v. City of Joplin, Mo.*, No. 04-5135-SW-RED, 2006 WL 744281, at *3 (W.D. Mo. Mar. 21, 2006) ("Generally, Plaintiff's status as a pre-trial detainee would place [him] outside of the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners.") (citing *Hott v. Hennepin Cty.*, 260 F.3d 901, 905 (8th Cir. 2001)). In analyzing Plaintiff's inadequate medical care claim under the Fourteenth Amendment, the Court applies the same deliberate indifference standard as applied to Eighth Amendment claims. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) ("Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment.") (citation omitted).

To establish a claim for deliberate indifference, Plaintiff must show (1) "he suffered from an objectively serious medical need" and (2) the jail officials "actually knew of, but deliberately disregarded, that need." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007) (citation omitted); *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (additional citation omitted)).

            **1.**    **Objectively Serious Medical Need**

In his amended verified complaint, Plaintiff makes sworn statements concerning his prescriptions and his physical and mental health while detained at the jail. Specifically, Plaintiff

alleges Defendants misadministered his Ambien and Omeprazole prescriptions and withheld his Adderall and Cyclobenzaprine medications, all of which Plaintiff repeatedly requested. Plaintiff alleges as a result he suffered severe pain and began throwing up bile to a degree that required emergency medical treatment for a possible cardiac event and, in addition, suffered from depression and ultimately attempted suicide. In Defendants' first motion for summary judgement, the Court found that Defendants did not controvert these sworn statements to take the matter outside the purview of the factfinder. The Court maintains that ruling here and finds, once again, Defendants have not established undisputed facts on which they are entitled to summary judgment.

As to the first prong of the deliberate indifference standard, it is well established that a serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). Defendant does not controvert or dispute that at the time Plaintiff was detained at the jail, he had valid prescriptions for Adderall, Omeprazole, Cyclobenzaprine, and Ambien, or that the medications were delivered to the jail. Defendants admit they did not give Plaintiff his Adderall or Cyclobenzaprine prescriptions.[5] Additionally, Defendants do not controvert Plaintiff's sworn statements the Ambien and Omeprazole were not administered according to the prescription and that he suffered pain and vomiting that required emergency medical treatment, in addition to suffering depression and attempted suicide.

Rather, on this record (which has not meaningfully been expanded since the Court's ruling on Defendants' first motion for summary judgment) there is at least a question of fact whether Plaintiff had an objectively serious medical need where his various prescription medications were delivered for him at the jail, he repeatedly requested these prescriptions, and suffered adverse

---

[5] As noted above, the record is not clear why Defendants did not administer to Plaintiff his Cyclobenzaprine prescription – although they do not dispute the fact Plaintiff was not given this prescription medication. Additionally, as to Plaintiff's Adderall prescription, Defendants continue maintain – as they did in the prior summary judgment proceeding – that they did not administer Plaintiff's Adderall prescription because Adderall is a "controlled substance" and pursuant to a "policy" it is therefore not administered at the jail. As in the initial summary judgment proceedings, it is not clear on the summary judgment record in what form this purported policy exists. The jail's policy for prescription medications, which Defendants do not dispute, requires prescription medications to be administered as prescribed and without deviation from the prescription. Nevertheless, Defendants do not explain the relevance of *why* a particular prescription medication was withheld or not administered according to the prescription to the objective analysis of this first prong of the deliberate indifference standard.

physical and mental effects when those prescription medications were either denied completely or not administered as directed by the prescription. *See Dadd v. Anoka Cty.*, 827 F.3d 749, 757 (8th Cir. 2016) ("When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow.") (collecting cases) (holding a failure to distribute plaintiff's Vicodin prescription despite awareness of it and plaintiff's pain constituted deliberate indifference); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006) (reversing grant of summary judgment and finding genuine issue of fact whether jail employees were deliberately indifferent by failing to administer prescription medication where plaintiff testified he was not given prescribed amount of seizure medication, both before and after suffering a seizure, despite filing grievances regarding this failure); *Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998) (finding "evidence is sufficient to make a submissible case on the issue whether [plaintiff] had serious medical need at the prescribed time" where plaintiff was prescribed anti-seizure medication to be taken at 4:00 AM); *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980) (reversing summary judgment in favor of defendant when plaintiff alleged defendant "denied access to medical treatment for three days, and that the defendants failed to carry out the treatment prescribed by [plaintiff]'s doctors" and defendant failed to controvert this allegation); *see also Jackson v. Reid*, No. 16-2405 (JRT/BRT), 2018 WL 550797, at *4 (D. Minn. Jan. 25, 2018) (agreeing with the parties there is "at least" a genuine question of material fact whether plaintiff had an objectively serious medical need when it was undisputed plaintiff was diagnosed with mental health disorders and was prescribed Zoloft as treatment, and plaintiff alleged defendants did not give the medication as prescribed); *cf. Jones v. Minn. Dep't of Corr.*, 512 F.32d 478, 482 (8th Cir. 2008) (granting summary judgment when plaintiff's symptoms were not indicative of an obvious medical issue a layperson would recognize because plaintiff "was not diagnosed by a physician as requiring treatment"); *Muhammad v. King*, 21 F.3d 432, 432 (8th Cir. 1994) (affirming grant of summary judgment on claim of deliberate indifference where plaintiff "did not submit evidence to rebut medical records showing that he received continuous treatment for his conditions and [was given] medication as prescribed").

    Defendants attempt to minimize the seriousness of Plaintiff's medical needs by arguing (1) the prescriptions Plaintiff brought with him to the jail were set to expire (unless refilled) while he was detained at the jail, and (2) Plaintiff has not been prescribed or provided these prescriptions while held at subsequent detention facilities. Defendants' argument is misplaced, however.

Simply because a prescription may run out without a refill during Plaintiff's detention does not remove the material issue of whether Plaintiff had an objectively serious medical need in October of 2018. Defendants do not dispute Plaintiff was prescribed these medications; they were brought to the jail for Plaintiff; some of these prescriptions were not administered at all, and some of these prescriptions were not given as medically prescribed. Similarly, whether Plaintiff has been prescribed or given any particular prescription medication after leaving the jail does not establish his medical condition was not serious as a matter of law, either. This argument only highlights the fact-intensive nature of this issue in the context of this case that is appropriate for the fact-finder and not the Court at the summary judgment stage. Plaintiff alleges he suffered adverse physical and mental effects from the undisputed evidence of the Defendants' refusal to give, and misadministration of, valid prescription medications to Plaintiff, and the medical records viewed in the light most favorable to Plaintiff arguably support Plaintiff's allegations. On this summary judgment record, there is at least a question of fact whether Plaintiff suffered an objectively serious medical need.

Finally, Defendants argue Plaintiff has provided no expert medical evidence of any adverse effect on his prognosis due to Defendants' allegedly unconstitutional actions and, therefore, they are entitled to judgment as a matter of law. The Court rejected this argument once before in ruling on Defendants' first motion for summary judgment, and it does so again here. Because Plaintiff's constitutional claim rests on the misadministration and the withholding of his prescription medications – rather than a discrete constitutional claim based on a delay in treatment – Plaintiff need not provide evidence of an "adverse effect on his prognosis." *Cf. Crowley v. Hedgepath*, 109 F.3d 500, 502 (8th Cir. 1997) (affirming summary judgment because plaintiff failed to submit medical evidence showing the delay in providing sunglasses adversely affected his prognosis).[6] In other words, the undisputed facts (and Defendant's failure to controvert Plaintiff's sworn allegations or to demonstrate Plaintiff cannot otherwise bring forth facts he suffered an objectively

---

[6] Even if the need for verifying medical evidence applies here, "a need for medical attention that would have been obvious to a layperson [makes] submission of verifying medical evidence unnecessary." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *see Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995) (holding that serious medical need is one that is either obvious to a layperson or supported by medical evidence). Plaintiff's prescription medications – presented to the jail after Plaintiff's arrival – and his complaints and visible adverse physical condition including pain and vomiting bile at a minimum creates a triable issue of fact whether Plaintiff had a serious medical need. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Aswegan*, 49 F.3d at 464.

serious medical need) create at least a triable issue of fact whether Plaintiff had an objectively serious medical need. Therefore, additional evidence such as verifying medical evidence is unnecessary for Plaintiff to meet his burden at this stage of the case. *Hartsfield*, 371 F.3d at 457; *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995).

### 2. Subjective Disregard

The Court now turns to the second prong of Plaintiff's inadequate medical care claim: whether Defendants knew of but deliberately disregarded Plaintiff's serious medical need. Deliberate indifference to medical needs requires Plaintiff to show Defendants had "a mental state akin to criminal recklessness: [that they] disregard[ed] a known risk to the [Plaintiff]'s health." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (citation and quotation marks omitted). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence Cty.*, 452 F.3d 978, 983 (8th Cir. 2006) (quoting *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)); *see also Estelle*, 429 U.S. at 104-05 (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed") (footnotes omitted).

"A prison official is deliberately indifferent to a prisoner's serious medical needs only if he is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 984 (quoting *Farmer*, 511 U.S. at 837). The deliberate indifference standard, however, "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). "A party need not necessarily show that the actor actually knew of the substantial risk of harm to an inmate; the district court can infer knowledge if the risk was obvious." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (collecting cases). Deliberate indifference is manifested, generally, "by intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Id.* at 862 (quoting *Krout*, 583 F.3d at 567). In other words, as the Eighth Circuit has recognized, "the knowing failure to administer prescribed medicine can itself constitute deliberate indifference." *Phillips*, 437 F.3d at 796 (holding summary

10

judgment not appropriate where plaintiff presented evidence he was not given anti-seizure medication as prescribed both before and after suffering a seizure); *cf. Jackson*, 2018 WL 550797 (finding that, despite not providing plaintiff his prescription antidepressant, defendants were not deliberately indifferent because they had "no reason to 'be aware of facts' suggesting that 'a substantial risk of serious harm' existed" where plaintiff alleged that he suffered only one night and that he asked for his Zoloft just twice but otherwise did not allege that he suffered symptoms after various other instances of being denied or refusing to take the prescription) (citing *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)).

In seeking summary judgment, Defendants point to two facts they contend are uncontroverted and that demonstrate they were not deliberately indifferent: (1) Plaintiff was provided his prescription medications or medications were withheld pursuant to jail policy, and (2) Plaintiff received medical attention when he complained of and suffered acute medical issues. First, the Court notes it is far from undisputed that Plaintiff's Ambien and Omeprazole prescriptions were administered correctly. To support their argument that these medications were administered correctly, Defendants rely on the medical administration records from the jail. These records, however, when viewed in the light most favorable to Plaintiff as the non-movant, establish only that unspecified "meds" were administered sometimes once, twice, or three times a day and at varying times of day (i.e., morning, afternoon, or night, or a combination).[7] And in his verified amended complaint, Plaintiff alleges Defendants did not administer his Ambien or Omeprazole prescriptions as prescribed. Plaintiff alleges he "begged [Defendant] Jeff Lane multiple times a day to get my medication but he refused, and that he suffered eighteen days of pain before he was taken to the Gainesville medical clinic for medical treatment for a possible cardiac event." Defendants simply fail to properly controvert this asserted fact or show that Plaintiff cannot present

---

[7] Moreover, the factual waters are further muddied in this case as to what "meds" were even actually administered to Plaintiff (let alone when any particular medication was actually administered) where the jail's medical administration record itself reflects that Plaintiff is to receive Omeprazole and Ambien, both with a frequency of "1" (Doc. 103-14 at 1). Yet, attached to their reply, Defendants submitted a declaration from an administrative assistant for the Ozark County Sheriff's Office attesting that while Plaintiff was detained at the jail, various "[p]rescription and over-the-counter medications [potentially including aspirin, Tylenol, ibuprofen, and/or antacid tablets] were provided to [Plaintiff]." (Doc. 118-1 at 1.) Defendants have failed to set forth as undisputed facts in this case *which* "meds" were administered to Plaintiff and *when*. As a result, Defendants cannot rely on the jail's medical administration record, without any other basis in the summary judgment record, to establish as an undisputed fact Plaintiff was administered his prescription medications as prescribed and/or as directed by any medical professional.

11

any evidence to prove this asserted fact. On this summary judgment record, it is far from undisputed that these medications were administered correctly.

In addition, Defendants do not dispute they withheld Plaintiff's Adderall prescription. Instead, they argue in doing so they were simply following a "policy" at the jail for "controlled substances." At the same time, Defendants do not dispute the existence of a jail policy requiring prescription medication to be administered as prescribed and without deviation from the prescription. The Court again finds there is at least a triable issue of fact whether Defendants were deliberately indifferent to Plaintiff's serious medical needs when they, as non-medical personnel, substituted a controlled substance "policy" for administering medication – or, more specifically, not administering a medication – for that of a treating physician via the prescription.[8] *See McAdoo v. Martin*, No. 6:13-cv-06088, 2017 WL 1091348, at *7 (W.D. Ark. Mar. 21, 2017) (prison officials were deliberately indifferent in refusing to give plaintiff a pain medication prescribed by emergency room doctors based on the detention center's policy as a "narcotic free facility"), *aff'd in part and rev'd in part on other grounds*, 899 F.3d 521 (8th Cir. 2018); *cf. Vaughan*, 49 F.3d at 1346 (finding defendants entitled to summary judgment because they were not deliberately indifferent to plaintiff's medical needs when the record showed they "responded promptly" to plaintiff's requests for medical and psychiatric care; initially followed the advice of which medications plaintiff should be given and when they should be given; and then followed the advice of a subsequent examining physician; and administered medications as prescribed and refilled those prescription medications until plaintiff left the detention center).

Defendants argue, on the other hand, failure to follow the jail's policy on prescription medications is, at most, recklessness that does not rise to the level of deliberate indifference. Given the fact issues that exist in this case as explained above in conjunction with Plaintiff's statements in his verified complaint that Defendants do not properly controvert, including the length of time he suffered without his prescription medications being properly administered and the physical and mental effects he suffered as a result, the Court does not find as a matter of law on this summary judgment record that Defendants are entitled to summary judgment on Plaintiff's claim for deliberate indifference. In short, the summary judgment record reveals, at a minimum, there is a

---

[8] Although not dispositive, it is also relevant that Defendants' substituted "policy" is in contradiction with the jail's express policy that strictly required the administration of medication as prescribed.

question of fact whether Defendants were deliberately indifferent by entirely withholding Plaintiff's prescription for Adderall and Cyclobenzaprine and misadministering Plaintiff's other prescription medications.

Defendants' other argument that Plaintiff was provided acute medical care on two occasions is also unpersuasive. This argument overlooks that Plaintiff's constitutional claim extends beyond a mere failure to provide medical attention but concerns the continued withholding and misadministration of several prescription medications, leading to adverse physical and mental symptoms and effects that, in turn, required acute medical treatment and care.[9]

Defendants also attempt to distance themselves from the misadministration of the prescription medications. Specifically, as to Defendant Lane, they argue, "[t]o the extent they made direct decisions regarding Plaintiff's care or medication administration in the first place, there are numerous deputies in the department besides Lane - against whom no claim or allegation is made." (Doc. 103 at 16.) This argument is unpersuasive. The presence of other deputies in the jail, apparently including three others besides Defendant Lane who are recorded in the medication log as administering "meds" to Plaintiff, does not, without more, provide a factual basis for finding as a matter of law Defendants did not act with deliberate indifference.

Although not expressly contained in the summary judgment record, in their reply brief, Defendants state that Defendant Lane's badge number is "937." (Doc. 118 at 14, ¶ 11 reply.) This badge number appears on the medication log on nine occasions: "10/04/2018 [at] 08:30:05"; "10/05/2018 [at] 08:41:39"; "10/10/2018 [at] 08:12:25"; "10/11/2018 [at] 08:17:58"; "10/12/2018 [at] 08:30:47"; "10/30/2018 [at] 08:16:14"; "10/31/2018 [at] 08:17:10"; "11/01/2018 [at] 08:44:50"; and "11/05/2018 [at] 08:17:15." (Doc. 111-3 at 5-6.) Notably, the medical log does

---

[9] Similarly, in their motion Defendants attempt to cast Plaintiff's claim as a mere disagreement with a treatment decision. The Court rejects this framing of Plaintiff's constitutional claim, however. The claim asserted here does not appear to be Plaintiff's disagreement with a treatment plan devised or directed by a medical professional, but rather Defendants' alleged failure to follow a prescribed treatment plan and/or substituting their own non-medical judgment in the place of medical professionals. Nothing in the record suggests either the withholding of Plaintiff's prescription medications or the misadministration of his other prescriptions were the result of advice or at the direction of any medical professional. Indeed, from the summary judgment record the opposite can be reasonably inferred – at a minimum, Defendants, who as they concede in their motion are not trained medical professionals (*see* Doc. 103 at 16 ("Neither Defendant Sheriff Darrin Reed nor Deputy Jeff Lane are trained medical doctors or nurses.")), substituted their own controlled substance "policy" or judgment in withholding and/or misadministering Plaintiff's prescription medications. Simply, nothing in the summary judgment record suggests the actions on which Plaintiff's constitutional claim rests were the result of reasoned medical judgment on which Defendants simply relied.

not include a record of medication being given in the morning on several days: October 15 through October 19, 2018; October 22 through October 26, 2018; October 29, 2018; November 2, 2018; November 6, 2018; November 9, 2018; and November 12 through November 14, 2018; and no medication is recorded as being given at any time on November 8, 2018. (*Id.*) Defendants argue that the failure to properly record administration of medication in the log does not mean the medication was not given. That may be. It does not, however, mean Defendants are entitled to summary judgment.

If, for instance, (1) the undisputed facts showed Defendant Lane was not working on the mornings when the medication log does not reflect medication was administered to Plaintiff, or (2) if it was an undisputed fact within the summary judgment record that medication was administered as prescribed on those mornings despite not being recorded, whether by Defendant Lane or another individual, among other conceivable hypotheticals, those scenarios could potentially entitle Deputy Lane, and perhaps even Sheriff Reed, to judgment as a matter of law.[10] This summary judgment record does not reflect such a viable scenario for Defendants, however. Instead, as Defendants' argument itself illustrates, there is a genuine dispute of fact whether they were deliberately indifferent, including whether any particular medication was administered according to the prescription. Stated differently, on the current summary judgment record, when viewed in a light most favorable to Plaintiff, a reasonable jury could conclude Deputy Lane did not administer the medications as prescribed, as Plaintiff alleges in his verified amended complaint.

Finally, as to Sheriff Reed, Defendants argue that "Sheriff Reed did not administer any medication to Plaintiff during his detainment in Ozark County Jail." (Doc. 118 at 14.) However, individual liability is not limited to the misadministration of Plaintiff's medications. Individual

---

[10] Other hypotheticals can likewise be envisioned that would entitle Defendants to summary judgment even if Plaintiff's allegations as to the administration of his medicines are true. For instance, if Defendants presented testimony or an affidavit from Plaintiff's treating physicians when he was taken to the hospital that misadministering or withholding Plaintiff's four prescribed medications (1) would not have caused the symptoms Plaintiff suffered, or (2) would not have caused, contributed, or affected Plaintiff's serious medical need, or (3) is irrelevant because Plaintiff did not suffer from a serious medical need, then summary judgment may be warranted. Defendants have not done so, however, and as the Court has explained, given the particulars of this case and on the summary judgment record presented to the Court, Defendants have not satisfied their burden as summary judgment movants to show there is no genuine issue of material fact and they are entitled to judgment as a matter of law.

14

liability may also arise from the misuse of authority. *See Miller v. City of St. Paul*, 823 F.3d 503, 507 (8th Cir. 2016) ("§ 1983 imposes liability on an official who oversteps [his] authority and misuses power") (citation and quotation marks omitted); *see also Monroe v. Pape*, 365 U.S. 167, 184 (1961) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). Plaintiff's sworn complaint includes allegations that he requested his medication numerous times from Defendants but was never provided all of his prescription medications as prescribed. (Doc. 13 at 6-9). In fact, Plaintiff alleges that Sheriff Reed specifically had final approval concerning whether he received his prescribed medications. (*Id.* at 6 ("At that point I told Jailer Jeff Lane and he stated he could not give medication without Sheriff Darrin Reed[']s approval.").) Defendants do not properly dispute these asserted facts. Additionally, Defendants admit Plaintiff's Adderall prescription was withheld because of a controlled substance "policy." Absent evidence of a medical justification, withholding Plaintiff's prescribed medication on the basis of an asserted controlled substance "policy" may well support a finding of liability in this case. *See also McAdoo*, 2017 WL 1091348, at *7.

At a minimum, genuine issues of fact exist as to whether Defendants were subjectively aware of but disregarded a serious medical need. The fact that Defendants, who are not medical personnel, substituted their controlled substance "policy" and their schedule for administering medication for that of a treating physician at least creates a triable issue as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

Accordingly, Defendants' motion for summary judgement on Plaintiff's claim for deliberate indifference is **DENIED**.

### C. Whether Defendants are entitled to qualified immunity

Defendants also argue they are nonetheless entitled to qualified immunity. As explained above, however, the record demonstrates at least a genuine question of fact whether Plaintiff had a serious medical need and whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. The Court finds on the current summary judgment record, when viewed in the light most favorable to Plaintiff, that a fact-finder could conclude Defendants were deliberately indifferent to Plaintiff's serious medical need in their misadministration and withholding of Plaintiff's various prescription medications. Stated differently, Defendants have not demonstrated that, on this record, a reasonable fact finder could not conclude the facts, when viewed in a light

15

Case 6:19-cv-03192-RK   Document 126   Filed 01/11/22   Page 15 of 18

most favorable to Plaintiff, show their conduct did not violate a clearly established constitutional right. *See Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) ("Qualified immunity is appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right.") (citation omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation, quotation marks, and alterations omitted). This standard is satisfied so long as "existing precedent . . . ha[s] placed the statutory or constitutional question beyond debate." *Id.* In other words, "clearly established law is 'dictated by controlling authority or a robust consensus of cases of persuasive authority.'" *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019) (citation omitted). It is plainly established that pre-trial detainees have a constitutional right to adequate medical care. *Dadd*, 837 F.3d at 757 (citing *West*, 487 U.S. at 55). And further, as the Eighth Circuit has explained, "[w]hen an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow."[11] *Id.* (collecting cases) (denying qualified immunity for failure to administer prescribed pain medication delivered to the jail for plaintiff for a dental procedure plaintiff recently had before being incarcerated).

As previously explained in the Court's first summary judgment order, the Court finds the Defendants had fair warning about the unconstitutionality of failing to provide prescription medication for a serious medical need. Said another way, if Plaintiff shows (1) Plaintiff suffered from an objectively serious medical need, and (2) Defendants actually knew of, but deliberately disregarded that need by withholding or misadministering Plaintiff's prescription medication, then the Defendants violated a clearly established constitutional right. Therefore, at this juncture and on this summary judgment record, the Court does not find Defendants are entitled to qualified immunity. *See Thompson v. King*, 730 F.3d 742, 749-50 (8th Cir. 2013); *cf. Mead v. Palmer*, 794 F.3d 932, 937 (8th Cir. 2015) (defendants entitled to qualified immunity on plaintiff's claim by

---

[11] The Court construes the Eighth Circuit's use of the word "may" to mean "may or may not." The Court, however, has failed to find an Eighth Circuit ruling in a case resting on the officials conduct of withholding or misadministering medication in which both (1) qualified immunity was warranted and (2) deliberate indifference to a serious medical need was found.

denying him dentures he required because plaintiff received regular dental examinations and was never prescribed dentures as medically necessary). Defendants' motion for summary judgment based on the application of qualified immunity is **DENIED**.

## IV. Punitive Damages

Finally, Defendants argue they are entitled to summary judgment as to Plaintiff's claim for punitive damages. Punitive damages may be recovered under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages may be "awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown." *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997) (citing *Smith*, 461 U.S. at 52) (other citation omitted). "A finding of deliberate indifference to a serious medical need, while establishing liability under § 1983, does not necessitate a finding of callous indifference warranting punitive damages." *Washington v. Denney*, 900 F.3d 549, 564 (8th Cir. 2018) (quoting *Coleman*, 114 F.3d at 787). Punitive damages are intended to "punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Id.* (citation and quotation marks omitted). "The focus, in determining the propriety of punitive damages, is on the intent of the defendant, and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Coleman*, 114 F.3d at 787 (8th Cir. 1997) (internal citations omitted).

Defendants primarily argue punitive damages are not warranted in this case as a matter of law because "Plaintiff was treated appropriately" and "was not denied medical care." At this juncture, this argument is plainly unpersuasive given the various issues of fact that exist on this summary judgment record as discussed above. *Cf. Davis v. Buchanan Cty. Mo.*, No. 5:17-cv-06058-NKL, 2020 WL 2616737, at *10 (W.D. Mo. May 22, 2020) (defendants entitled to summary judgment on plaintiff's request for punitive damages because the Court granted defendants' motion for summary judgment on the § 1983 claim against them) (citing *Fletcher v. Tomlinson*, 895 F.3d 1010, 1023 (8th Cir. 2018)). Despite Defendants' suggestion to the contrary, it is not a forgone conclusion on this summary judgment record that Defendants did not violate Plaintiff's constitutional rights or were not deliberately indifferent to his serious medical needs.

In addition to the undisputed facts discussed above (in conjunction with the triable issues of material fact whether Defendants were deliberately indifferent to Plaintiff's serious medical needs), Plaintiff states (and Defendants do not meaningfully controvert) he had a romantic relationship with an individual whose husband is a friend of Defendant Reed's and that Defendant Reed directed "numerous traffic stops and visits" to Plaintiff's home and told Plaintiff to end the relationship. Plaintiff states in his verified complaint that while he was detained and asking for his prescription medications, Defendant Reed told him, "[y]ou will get them tomorrow but tomorrow never comes," and that Defendant Lane told Plaintiff it was Defendant Reed who had to approve Plaintiff's medications. Moreover, it is undisputed Defendants withheld Plaintiff's Adderall prescription pursuant to a "controlled substance policy" that, it appears, contradicts the jail's express prescription medication policy. Plaintiff states, and Defendants do not controvert, he asked Defendant Lane for his prescription medications but was told Defendant Reed had to approve them. Given the issues of fact yet to be resolved in this case, the Court does not find as a matter of law, punitive damages are not warranted. *See Erickson*, 77 F.3d at 1081 (holding, "Because a jury must decide whether [defendants] acted with deliberate indifference, the district court properly refused to dismiss [plaintiff]'s claims for punitive damages against them") (citation omitted). This is not to say an award of punitive damages is required in this case, only that on this record and given the genuine issues of fact that remain, summary judgement in Defendants' favor on Plaintiff's punitive damages claim would be improper. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for punitive damages is **DENIED**.

V. Conclusion

Therefore, because the Court finds (1) triable issues of fact remain whether Defendants violated Plaintiff's constitutional rights and were deliberately indifferent to his serious medical needs, and (2) that Defendants are not entitled to qualified immunity at this juncture, Defendants' motion for summary judgment (Doc. 102) is **DENIED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 11, 2022